IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GREGORY T. WALKER,

Defendants.

**8:26CR75**

**ORDER**

This matter comes before the court on Defendant Gregory Walker's Motion for a Bill of Particulars (Filing No. 45), his supporting brief (Filing No. 46), and the Government's brief in opposition. (Filing No. 47). The matter was referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)(A). Being duly advised in the premises, the court denies the motion. The court also denies Defendant's request for evidentiary hearing and finds that the matters at issue can be resolved on the papers submitted.

## I. BACKGROUND

On April 21, 2026, the grand jury returned a seven-count indictment against Defendant Walker. (Filing No. 1). Count I charges Defendant with assault with a dangerous weapon in violation of 18 U.S.C. §§113(a)(3) and 1153. Counts II through VII charge him with intentional child abuse in violation of 18 U.S.C. §§1153 and Neb. Rev. Stat. §§28-707(1)(a) and (b).[1] Defendant was arraigned on those charges on May 8, 2026, and entered a plea of not guilty as to all charges. (Filing No. 12, text minute entry). The grand jury later returned a superseding indictment on July 22, 2026, which included the same charges, adding only the word "intentionally" to Counts II through VII. (Filing No. 36 and 39). Defendant waived his personal appearance on the superseding indictment and again entered a plea of not guilty on all charges. (Filing No. 42).

[1] Counts VI and VII are also asserted against a co-defendant, Keri Lapointe.

The superseding indictment asserts that Defendant committed the offenses of assault and/or intentional child abuse directed at four minor children over the course of approximately four years. (Filing No. 36). Counts I through IV relate to the same minor child identified as Minor Victim 1 and Counts V through VII relate to three additional minor children identified as Minor Victims 2, 3, and 4. Some of the charges are more specific, including a charge of assault when Defendant allegedly "threw a metal chair at MINOR VICTIM 1, striking MINOR VICTIM 1 in the head," on or about November 10, 2023. (Filing No. 36 at 1). Count II of the indictment alleges that on or about November 10, 2023, Defendant engaged in intentional child abuse when he "forced MINOR VICTIM 1 to work in [a] food truck, punched MINOR VICTIM 1, and threw objects at MINOR VICTIM 1, including a metal chair that struck MINOR VICTIM 1 in the head." (Filing No. 36 at 1).

The other charges and remaining date ranges are much broader, including in Count III where it is alleged that Defendant engaged in additional acts of intentional child abuse "[b]etween October 1, 2020, and on or about May 30, 2024," when he "threw MINOR VICTIM 1 to the ground and kept MINOR VICTIM 1 out of school." (Filing No. 36 at 2). Count IV similarly alleges that "[b]etween on or about October 1, 2020, and on or about May 30, 2024," Defendant "shoved MINOR VICTIM 1 down the stairs and then punched MINOR VICTIM 1 repeatedly." (Filing No. 36 at 2). As to Counts V, VI, and VII, the indictment broadly alleges (as to Minor Victims 2, 3, and 4), that Defendant "did knowingly and intentionally place [the minor victim] in a situation that endangered [their] life or physical or mental health, or cruelly punished [them]." Those charges include dates spanning a period of one month up to four years and do not identify what acts in particular are alleged to have occurred or specifically when. (Filing No. 36 at 3-4).

Defendant filed a Motion for Bill of Particulars on August 3, 2026, arguing that the allegations contained in Counts III through VII are overly broad, leaving him to "speculate whether the Government intends to rely upon allegations of physical abuse, neglect, educational deprivation, medical neglect, inadequate supervision, or some combination

thereof." He expresses additional concern that the "breadth of these allegations implicates [his] constitutional protections against double jeopardy." (Filing No. 46 at 3). Defendant takes particular issue with the large date-range asserted in Counts III through VII, arguing that the Government should be required to provide more specific dates or approximate dates, locations, or surrounding circumstances. He is also critical of Counts V through VII as those "merely recite the statutory language," but fail "to identify even one single act or omission attributed to the Defendant." (Filing No. 46 at 3).

In response, the Government first argues that the motion is untimely. It next argues that the charging documents are sufficiently specific and that it provided defense counsel with discovery on May 15, 2026. Those materials included "copies of all of the investigation materials in the U.S. Attorney's Office's possession related to this case,… including summaries and recordings of the forensic interviews of multiple children who resided with the defendants." (Filing No. 47 at 2). According to the Government, "the children recount[ed] years of abuse" during those interviews. While the children did not provide "precise dates," they did "describe specific instances in detail." (Filing No. 47 at 2-3). This included regular patterns of abuse allegedly directed at Minor Victim 1 who was 17 years old at the time of the interview. That abuse consisted of, among other things, the minor allegedly being punched in the face and body "on other occasions and suffering black eyes, bruises, and a bloody nose from those assaults." (Filing No. 47 at 4).

During one incident, Defendant allegedly shoved Minor Victim 1 "down the stairs and then followed and punched him over and over on his body," which resulted in a "bloody nose and black eye." (Filing No. 47 at 4). During another incident, Defendant allegedly became angry with Minor Victim 1 and began yelling, punched him in the body, and later threw a metal chair at him, hitting him in the head and causing it to bleed heavily. Defendant and co-defendant LaPointe took the child to the hospital, told hospital staff that a box fell off the shelf hitting the child's head, and that the injuries to the child's face were from a basketball. The Government represents that law enforcement obtained copies of those medical records, which the court presumes have also been provided in discovery.

As to the remaining children, the Government described additional incidents of alleged abuse against Minor Victims 2 and 3, who were both 7 years old at the time of their interviews. This included being spanked, slapped in the face, or hit on the body. While the investigation was still pending, Minor Victim 3 apparently disclosed an additional incident in which Defendant allegedly grabbed him by the arm and dragged him downstairs, which resulted in bruising. (Filing No. 47 at 6). Minor Victim 4 reported that the home was not safe for him or his siblings and that Defendant had slapped him in the face once, approximately two years before his interview. (Filing No. 47 at 5). The Government further represents that Minor Victims 2, 3, and 4, as well as another minor who was living in the home, reported seeing Defendant engage in repeated acts of abuse directed at the other children. This included seeing Defendant hit Minor Victim 1 in the face and smashing his phone, observing Minor Victims 1 and 2 getting beat up if they did not complete certain workouts correctly, keeping the minor children home from school, and observing bruises and suspecting that Minor Victim 1 may have suffered a broken rib cage at one point, among other incidents. (Filing No. 47 at 5-6).

## II. LEGAL STANDARD

Fed. R. Crim. P. 7(c)(1) requires only that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Only when an essential element "of substance" rather than of form is omitted is an indictment fatally insufficient. *United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012) (internal citation omitted).

> An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to the subsequent prosecution. *United States v. Young*, 618 F.2d 1281, 1286 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980). An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id.*

*United States v. Wessels*, 12 F.3d 746, 750-51 (8th Cir. 1993); *see also* *United States v. Bowie*, 618 F.3d 802, 817 (8th Cir. 2010). "If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (*citing* Fed. R. Crim. P. 7(f)). The motion must "be filed within 14 days after arraignment or at a later time if the court permits," Fed. R. Crim. P. 7(f), and the trial court has broad discretion to grant or deny such relief. *United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir. 1991).

The Eighth Circuit has made clear that "the primary purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or to minimize the element of surprise at trial. A bill of particulars, however, is not a proper tool for discovery; it is not to be used to provide detailed disclosure of the government's evidence at trial." *Wessels*, 12 F.3d at 750-51 (internal citations omitted). The motion may be denied if the information becomes available through other sources, including responsive pleadings, an open file policy, or pretrial discovery. *See* *United States v. George*, 548 F.Supp.2d 713, 716-17 (D.S.D. 2008) (the primary purpose is for "clarification of the indictment, not the government's proof of its case"). In one case, the Eighth Circuit concluded the magistrate judge did not err in denying a motion for bill of particulars as moot, or for the trial court to adopt that finding, when the "government explained its theory of the case" in its response to the motion and "had already provided [the defendant] with considerable discovery." *United States v. Huggans*, 650 F.3d 1210, 1220 (8th Cir. 2011). Those disclosures, according to the court, "were more than sufficient to enable [the defendant] to understand the nature of the charges, prepare a defense, and avoid unfair surprise." *Id.*

The court has discretion to determine whether to hold an evidentiary hearing on a motion for bill of particulars. *See* *United States v. Hardison,* 859 F. 3d 585, 589 (8th Cir. 2017). The court is only required to hold an evidentiary hearing "when the moving papers are sufficiently definite, specific, and detailed to establish a contested issue of fact." *United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013).

## III. ANALYSIS

Defendant's motion presents legal questions concerning the sufficiency of the indictment and the adequacy of the Government's disclosures, not contested factual issues. Because the existing record permits resolution of those issues, the court finds that an evidentiary hearing is unnecessary. The court also rejects the Government's argument that the motion is untimely as it was not filed within 14 days after Defendant's initial arraignment. While Fed. R. Crim. P 7(f) does say that, it also provides some discretion, further stating "or at a later time if the court permits." That permission was granted here as the pretrial motion deadline was extended without objection to August 11, 2026. (Filing No. 33). Moreover, Defendant's arraignment on the superseding indictment was set for July 29, 2026. (Filing No. 40, text order). While Defendant waived his appearance, he filed his motion within 14 days thereafter.[2]

As to the substance of the motion, the court finds the request should be denied as the superseding indictment fairly informs Defendant of the charges against which he must defend and it is not "so defective, by any reasonable construction," to assert the charged offenses. *See Wessels*, 12 F.3d at 750-51. Moreover, even if deficient in some respects, the court finds that the issues are moot as the Government has now provided its theory of the case in its response brief and has provided a complete copy of the investigative materials to Defendant in this matter. The court accordingly cannot find that Defendant is, or will be, unfairly surprised by the Government's case against him.

Defendant first takes issue with the broad date ranges set forth in the superseding indictment, in particular that the alleged abuse occurred over a roughly four-year period as to Minor Victim 1 in Counts III and IV, a two-year period for Minor Victims 2 and 4 in Counts V and VII, and a one-month period for Minor Victim 3 in Count VI. He seeks a

---

[2]The Government is correct that there appears to be no reason why Defendant could not have filed his motion earlier as the changes in the superseding indictment were minimal. But the court declines to parse out when changes in the charging document are enough to justify a new 14-day window under the rule, especially when the motion was filed within the authorized pretrial motion deadline.

more specific date or approximate dates for each alleged incident. But an accused is generally not entitled to a bill of particulars which provides the exact date of the commission of the alleged crimes where time is not an essential element of the crime. *See United States v. Nunez*, 668 F.2d 10, 11–12 (1st Cir.1981); *see also United States v. Austin*, 448 F.2d 399, 400 (9th Cir.1971) ("generally, exact dates are not required so long as they are within the statute of limitation ... and no prejudice is shown"). "Time is not a material element of a criminal offense unless made so by the statute creating it." *United States v. Youngman*, 481 F.3d 1015, 1019 (8th Cir. 2007).

Time is not a material element of the relevant offenses charged here. Defendant is charged in Counts III through VII with intentional child abuse in violation of 18 U.S.C. §1153 and Neb. Rev. Stat. §§28-707(1)(a) and (b). Pursuant to §1153(a), "any Indian" who commits felony child abuse or neglect "within the Indian country, shall be subject to the same law and penalties as all other persons committing…" the offense. If the offense is not defined or punished under federal law, state law applies. *Id.* at §1153(b). Pursuant to Nebraska law, Neb. Rev. Stat. §28-707(a) and (b), a person commits child abuse if, among other things, he "knowingly, intentionally, or negligently causes or permits a minor child to be: (a) Placed in a situation that endangers his or her life or physical or mental health; [or] (b) Cruelly confined or cruelly punished." Time is not a material element of the offense, and as the Government points out, the statute of limitations for these alleged offenses is lengthy and has not expired. (Filing No. 47 at 7, n.1).

The court also finds compelling the analysis in *United States v. Beasley*, in which the Eighth Circuit recognized that minor children in child abuse prosecutions may be unable to remember exact dates and times. 688 F.3d at 532. In that case, the Eighth Circuit affirmed the trial court's denial of a motion for bill of particulars, noting that "'[f]airly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements' because of the inherent difficulties in investigating and prosecuting child abuse." *Id.* at 533 (quoting *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005)). The time periods at issue in *Beasley* were even more extensive, with conduct

spanning almost seven years in one charge. *Id.* at 532. While the charges in both *Beasley* and *Valentine* involved primarily child sexual abuse, the same reasoning applies here. The minor children in this matter may also have been "unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time." *Valentine*, 395 F.3d at 632. The charges set forth in the superseding indictment, in conjunction with the investigation materials now disclosed in discovery, are sufficient to provide Defendant with notice of the Government's case against him.

Defendant next argues that Counts V, VI, and VII are too broad, asserting only the statutory elements, but no specific acts. Viewed alone, Defendant is not wrong that the superseding indictment lacks detail concerning which acts or omissions are attributed to him in those particular charges. The Government explained that it included additional details in Counts II, III, and IV as to Minor Victim 1 to distinguish between separate instances of abuse. (Filing No. 47 at 9). The Government reasons that the purported conduct against the other minors consisted of a pattern of abuse or course of conduct over a period of time, which included repeated acts of abuse and excessive discipline, as well as observing abuse inflicted on the other children. (Filing No. 47 at 10-11).

It would have of course been preferable for the Government to identify the specific acts of alleged wrongdoing for all charges in the superseding indictment. But again, Defendant has now received through discovery all of the investigative materials, including summaries and recordings of the forensic interviews of multiple children who resided in the home and who allegedly recounted years of abuse. (Filing No. 47 at 2). The Government's response brief provides additional details concerning specific incidents of alleged abuse directed at each minor child. (Filing No. 47 at 3-6). Nebraska courts have also indicated that intentional child abuse under Neb. Rev. Stat. §28-707 can be based on a course of conduct occurring over time. In *State v. McMillion*, 875 N.W.2d 877, 893, 911 (Neb. 2016), for example, the Nebraska Court of Appeals determined there was sufficient evidence to sustain the defendant's conviction for intentional child abuse based upon her "numerous" acts that occurred over an approximately two-year period. To the extent there

arise concerns of duplicity, those issues are better addressed at trial by requiring the Government to make an election as to the specific acts or through a proper jury instruction. *See United States v. Keepsagle*, 30 F.4th 802, 811-12 (8th Cir. 2022) (distinguishing between a "pattern of continuous abuse" and "discrete incidents" under South Dakota law and concluding that an appropriate unanimity instruction should be provided to remedy a duplicitous indictment).

For many of these same reasons, the court also rejects Defendant's final concern that his constitutional protection against double jeopardy may be at risk due to the lack of specificity. Like the Eighth Circuit concluded in *Beasley*, Defendant does not reference any cases supporting his argument, and a determination as to whether he is actually at risk of duplicative prosecution seems "speculative and premature" at this time. 688 F.3d at 533 (quoting *Stephenson*, 924 F.2d at 762). These are again issues that can addressed at the time of trial through the use of a proper jury instruction if necessary.

For these reasons, IT IS ORDERED that Defendant Walker's Motion for a Bill of Particulars (Filing No. 45) is denied.

Dated this 11th day of August, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge